Edward G. Sponzilli, Esq. (Attorney ID# 13701975)
NORRIS McLAUGHLIN, P.A.
400 Crossing Blvd., 8th floor
P.O. Box 5933
Bridgewater, NJ 08807
Email: egsponzilli@norris-law.com
Telephone: 908-722-0700
Facsimile: 908-722-0755
Attorneys for Defendant, The Trustees of Princeton University

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK PELLECCHIA,<br><br>　　　　　Plaintiff,<br><br>- v -<br><br>PRINCETON UNIVERSITY,<br><br>　　　　　Defendant. | CIVIL ACTION NO.:<br><br>ELECTRONICALLY FILED<br><br>**NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C §§ 1441(a), 1331, 1332, and 1367 Defendant The Trustees of Princeton University, by and through its undersigned attorneys, hereby removes this action from the Superior Court of New Jersey, Mercer County, Docket No. MER-L-2056-23, to the United States District Court for the District of New Jersey. Pursuant to 28 U.S.C § 1446, Defendant makes the following short and plain statement of the grounds for snap removal:

### INTRODUCTION

1. On October 30, 2023, Plaintiff commenced a civil action against Defendant in Superior Court of New Jersey, Mercer County. A true and accurate copy of the Complaint filed in the action is attached as **Exhibit A**.

2. This is a civil action over which this Court has original jurisdiction based on diversity, pursuant to 28 U.S.C § 1332, and which may be removed by Defendant to this Court,

pursuant to 28 U.S.C. § 1441(a), because it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

3.      Additionally, this is a civil action over which this Court has original jurisdiction based on federal question jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1367, and which may be removed by Defendant to this court, pursuant to 28 U.S.C. § 1441(a), because Plaintiff alleges violations of federal law and this court may exercise supplemental jurisdiction over the state law causes of action.

## DIVERSITY OF CITIZENSHIP

4.      According to his Case Information Statement, Plaintiff Mark J. Pellecchia asserts he is a citizen of Colorado as his address is listed as 2051 Zlaten Drive, Longmont, Colorado, 80504. In Section III, paragraph 8 of his Complaint (Statement of Facts), Plaintiff Mark J. Pellecchia makes clear that he is a citizen of a state other than New Jersey.

5.      Defendant is a citizen of New Jersey.

6.      Accordingly, diversity of citizenship exists, pursuant to 28 U.S.C § 1332(a), because this action is between citizens of different states. The parties were citizens of different states at the time Plaintiff's Complaint was filed in the state action.

7.      Defendant has not been served with the Complaint or any documents in this action. Accordingly, because the lone party in interest has not yet been properly joined, there is no prohibition against removal under 28 U.S.C. § 1441(b)(2). See Encompass Insurance Co. v. Stone Mansion Restaurant Inc., 902 F.3d 147 (3d Cir. 2018) (concluding 28 U.S.C. § 1441(b) precludes removal only when a forum defendant has been properly joined and served).

## AMOUNT IN CONTROVERSY

2

8.     Plaintiff asserts the following claims against Defendants: infliction of bodily harm, intentional infliction of emotional distress, negligent infliction of emotional distress, and invasion of privacy. These claims are unliquidated.

9.     It is apparent on the face of the Complaint that Plaintiff is seeking damages in excess of $75,000. Plaintiff demands judgment for compensatory and punitive damages, in addition to half "of the retirement account holdings of all individuals involved that are now or once were paid through the Princeton University payment systems or equivalent lump sum payout."

**FEDERAL QUESTION JURISDICTION**

10.     Independently, Defendant can remove this action, pursuant to 28 U.S.C. § 1441(a), as the Complaint alleges causes of action under Federal Law which provides the court jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1367.

**CONCLUSION**

11.     Accordingly, removal to the United States District Court for the District of New Jersey is proper, pursuant to 28 U.S.C. §§ 1441(a), 1331, 1332, and 1367.

12.     Removal to the United States District Court for the District of New Jersey is appropriate because this action is being removed from the Superior Court of New Jersey, Mercer County, which is located within the District of New Jersey.

13.     This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11 and is timely filed within 30 days after the date the Removing Defendant received a notice of Plaintiff's Complaint and Summons.

14.    A true and accurate copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of New Jersey, Mercer County, and served upon counsel for Plaintiff.

15.    In filing this Notice of Removal, Defendants do not waive, and specifically reserve, all defenses, exceptions, rights, and motions.

16.    If any question arises as to the propriety of the removal of this action, the Removing Defendant respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

WHEREFORE, Defendant respectfully gives notice of removal of the state action herein from the Superior Court of the State of New Jersey, Mercer County, to the United States District Court for the District of New Jersey.


Dated: November 2, 2023                    Respectfully Submitted,

                                           **Norris McLaughlin, P.A.**
                                           Attorneys for Defendant, The Trustees of
                                           Princeton University

                                  By:      /s/ Edward G. Sponzilli
                                           EDWARD G. SPONZILLI

4

## LOCAL RULE 11.2 CERTIFICATION

I hereby certify that the matter in controversy in this action is not known to me to be the subject of any other action pending in any Court (other than the state court action removed hereby) or of any pending arbitration or administrative proceeding.

Dated: November 2, 2023                       Respectfully Submitted,

                                              **Norris McLaughlin, P.A.**
                                              Attorneys for Defendant, The Trustees of
                                              Princeton University

                              By:     /s/ Edward G. Sponzilli
                                      EDWARD G. SPONZILLI

# EXHIBIT A

————

MARK J. PELLECCHIA, PLAINTIFF

v.

PRINCETON UNIVERSITY

————

# I. INTRODUCTION

To help the court understand the plaintiff better, a bit of his backstory. Before he was 14 years of age, he was repeatedly targeted and shot at, survived toxic shock/septicemia also known as blood poisoning through the help of a childrens hospital intensive care unit, had at least ten different surgeries before his first kidney transplant, and even fended off and caught a neighborhood pedophile. These events during his early years did not cause long-term issues. In fact, such events helped him handle life. The plaintiff also requires expensive anti-rejection medication to keep him alive and his insurance company stopped covering it. After everything the plaintiff went through in his life, he was never in such distress that it required the court's help. The behavior and attacks directed at the plaintiff caused enough psychological distress that he now needs the courts help to resolve the matter.

During his time working for Princeton University, egregious and malicious behavior was directed towards the plaintiff. Multiple occurrences, while separately may seem harmless and immature, in fact appear to be intended to create psychological trauma. Much of the said harassment was very subtle. How is it possible that Princeton University employees, affiliates, and townspeople knew intimate details of his web surfing behaviors, spoken comments while in the privacy of his home, and therapy sessions; and why would they speak those details of his surfing or therapy to him the next day? Initial discovery will show, the behavior of Princeton University staff and or faculty, students, and affiliates has caused irreparable damage and destruction to his life. He gave almost 20 years to Princeton University and in return received nothing but continuous grief. This harassment extended beyond the walls of the university into his daily life which in turn prevented him from living normally. Past trauma if any was in complete control. The actions of Princeton, its affiliates, and employees compounded what was already there and manageable, to unmanageable levels of psychological pain and suffering. This ultimately led to the diagnosis of Complex PTSD. Simply put, the actions of Princeton and its affiliates gave the plaintiff Complex Post Traumatic Stress Disorder that has yet to be healed despite his best efforts; and it created long term life altering damage that needs to be addressed.

# II. SUMMARY OF CHARGES

1. Infliction of bodily harm

2. Intentional Infliction of Emotional Distress

3. Negligent Infliction of Emotional Distress

4. Invasion of Privacy

# III. STATEMENT OF FACTS

*1.*      As you'll learn, the offences are beyond petty slights and annoyances. The conduct is severe or pervasive enough where it created a work environment that a reasonable person would consider intimidating, hostile, or abusive. This abuse ultimately extended out to his private life. see *US Equal Employment Opportunity Commissions' guidelines regarding harassment.*

2.      A diagnosis of C-PTSD (Complex Post Traumatic Stress Disorder) was given due to prolonged harassment. Medical documentation can and will be provided.

3.      The plaintiff may in fact be autistic. If so, Princeton University employees and affiliates maliciously attacked an autistic person.

4.      The plaintiff has intrusive thoughts preventing him from moving forward with his life, which is indicative of PTSD. It's now several years, and this is just being presented.

5.     The plaintiff has been under financial attack since he received his retirement 401k portfolio in 2020. see *District of Colorado Case 1:23-cv-00635-STV.* There were also salary discrepancies while he worked at Princeton University. 18 USC § 1343, 18 USC §1341

6.     The plaintiff spent roughly 5 years on dialysis prior to a second kidney transplant while working at Princeton University. The events described also took place during that time. (starting roughly 2007) see *Americans with Disabilities Act Title 1, US Equal Employment Opportunity Commissions' guidelines regarding Depression, PTSD, & Other Mental Health Conditions in the Workplace, and Social Security Administration guidelines regarding dialysis and End Stage Renal Disease.*

7.     Princeton failed to provide a safe working environment. see *US Equal Employment Opportunity Commissions' guidelines regarding Depression, PTSD, & Other Mental Health Conditions in the Workplace.*

8.     The plaintiff felt it necessary to move his physical address to another state out of fear for his own safety.

9.     The plaintiff is now in a life-threatening situation. He requires expensive medicine to live, and this situation has created severe financial distress as the attacks have not ceased.

# IV. SUMMARY OF EVENTS

1.     In summer of 2018 while at home, in the supposed privacy of his apartment, the plaintiff was surfing the internet and jested about having 80% good luck for the following day. The next day while at work, he was struggling to repair a server. He called a co-worker Sarah C. in the server group. After she assisted with the issue she said in a mocking manner, "there's your 80% luck!". 49 CFR § 801.56, 20 CFR § 402.100, 18 USC § 2511 (1) (acd), 18 USC § 1030 (a)(2), NJSA 2C:33-4

2.     In summer 2017, while playing softball with the intramural league a Princeton student on the plaintiffs' team looks directly at him, pauses, then looks at the team manager Harris, and begins to say, "did you know that spinning a bottle under water is a way to cool it down faster?". The previous night while the plaintiff was in his apartment, presumably alone he placed a beer bottle under the cold tap and spun it to cool it down. 49 CFR § 801.56, 18 USC 2511 (1)(d), NJSA 2C:33-4, 20 CFR § 402.100

3.    In mid-2018 a co-worker by the name of Annie visited the plaintiffs' office. She saw the plaintiff had a photo of his nephew and niece. She said cute kids, he responded thanks, there not mine. She looked surprised and walked out without allowing him to explain. Not long after, photos of new children showed up in several of his co-workers' offices. The changes were very subtle. He stopped in to see Dianne W. and gave a quick glance at a photo of a pretty girl in the picture frame on her credenza. He said "wow, she's hot". There was nothing behind the words except to illustrate an attractive girl. Dianne's response with a smirk was "that's Charlayne's daughter, she's in high school". This incident sparked others that were much more malicious in nature. 41 CFR § 60-20.8, NJSA 2C:33-4

4.    Co-workers followed behind and made changes to his work, and in some instances at nearly the same time. While he was actively updating a twitter account page, his peers logged in and began reverting changes he had just made. During the occurrence the plaintiff stated that he heard them laughing as he went back to fix the work they had undone. Additionally, they made comments about him catching their change. "Oh, he caught it!" was the comment made from across the office. 41 CFR § 60-20.8, 18 USC § 1030(a)(2,5) (b), NJSA 2C:33-4

5.      In summer 2019, the plaintiff was frantic to find something to help his stress during several traumatic events. He visited a newly opened shop on Nassau Street and purchased a bottle of Charlotte's Web CBD oil. He returned to his office and took a full dropper dose as per instructions. He left the bottle in his overhead cabinet. The next day he took the same dose of CBD (1 dropper) and within minutes felt as if he was going to pass out. As he walked out of his office a co-worker stated with a smirk and in a sarcastic manner "make sure you shake the bottle really good first". 41 CFR § 60-20.8, NJSA 2c 12 1a, NJSA 2c:33-4

6.      During a campus intermural softball game, a co-worker Chris S. displayed exceptionally aggressive behavior towards the plaintiff. Later, after another nonconsensual drugging, while speaking on the phone to solve a problem, Chris S. began to intentionally slow his speech to have the plaintiff "mirror" or "mimic" the behavior. NJSA 2C:33-4

7.      While at home surfing the internet the plaintiff was passively messaged not to go to a softball game. The next morning, he retrieved his sneakers from his garage while going to work and noticed they seemed more worn. At game time when he put the cleats on, they were a larger size and not the same cleats. The sneakers switched was presumably an attempt to either cause injury or force him out of the game. NJSA 2c 12 1a, NJSA 2C:33-4

8. While co-working on a shared display Tom F. typed out the letters "cry", as he looked across the table with a smirk. The previous few nights these letters were popping up in high frequency on his home internet while surfing the web. The frequency was significant enough for the plaintiff to notice it. 49 CFR § 801.56, 8 CFR § 1030, 18 USC § 2511, NJSA 2C:33-4

9. While co-working the plaintiff made a brief reference to an event that occurred in his life that he discussed with his therapist the previous evening. After the brief reference the co-worker's response was, "Yeah, I'm sorry that happened to you". While the plaintiff appreciated the gesture, he was more concerned about his privacy. Tom's response was indicative of full event knowledge. 49 CFR § 801.56, 18 USC § 2511(1)(d), 20 CFR § 402.100

10. In summer of 2018, the plaintiff spent lunch with a fellow employee Kathleen F.. While walking on campus to lunch, he noticed an inordinate number of people wearing blue shirts. He commented "Blue, Blue". The next day while entering 701 Carnegie building, Jay D. was exiting. As they walked past each other Jay D. stated with a smirk, "blue, blue". This caused a reaction from the plaintiff that was self-destructive in nature. NJSA 2C:33-4

11.     Summer 2019 while in the office working, the plaintiff drank a large glass of water from the filtered water dispenser. Within minutes the plaintiff was high. He called an information technology co-worker Nicholas D. to discuss work. Nick witnessed the non-characteristic behavioral change. The plaintiff stated that he liked the drug (whatever it was) but had no desire to use it in the office especially considering it was an unknown substance ingested without consent. NJSA 2C:12-1a, NJSA 2C:33-4

12.     On or around October 2020 the plaintiffs' apartment in New Jersey was illegally entered and combustible material was smeared on the gas burners of his stove. 18 USC § 2511, 18 USC § 1113, 18 USC § 1512

13.     In September 2022, the plaintiffs' home in Colorado was illegally entered and the beer that was brewing was contaminated. Ethanol or moonshine "tailings" were added to the batch. (at the time of testing the plaintiffs' nose was congested) He tested it with an eye dropper, and he almost went into cardiac arrest. The only ingredients the plaintiff used were water, honey, and yeast. 18 USC § 2511, 18 USC § 1113, 18 USC § 1512

# V. STATEMENT OF EFFECTS ON PLAINTIFF

1. The plaintiff was diagnosis of Complex Post Traumatic Stress Disorder (C-PTSD) due to the events that occurred while working at Princeton University.

2. The plaintiff displayed non-characteristic behavior of reckless abandon which in turn damaged his reputation and good name.

3. At one point the plaintiff did start to move forward with his life. However, due to the continued attacks he's been unable to heal from the trauma they inflicted. Currently, the plaintiff is still unable to move forward and live a normal life.

4. A significant change in employment status and financial distress, deems tangible employment action and, in such cases, no affirmative defense is available. see *US Equal Employment Opportunity Commissions' guidelines regarding Vicarious Liability for Unlawful Harassment by Supervisors. Vance v. Ball State University*, 133 S.Ct. 2434 (2013)

# VI. CLOSING STATEMENT

Based on the details in this brief, which is only a small portion of wrongdoing, the immature and malicious behavior caused long-term psychological damage (C-PTSD) and destruction to the plaintiffs' life. The plaintiff believes that comfort and peace of mind is an appropriate course of action which would include compensatory and punitive compensation. Additionally, have they done it to others and if so, how many; and is this institutional behavior?

October 30, 2023

I /s/ Mark J. Pellecchia, attest the statements and information contained in this document to be truthful and accurate to the best of my knowledge.

OCTOBER 2023



New Jersey Judiciary
Civil Practice Division

## Civil Case Information Statement (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the
black bar is not completed, or attorney's signature is not affixed.

| For Use by Clerk's Office Only | | | | |
|---|---|---|---|---|
| Payment type ☐ check ☐ charge ☐ cash | Charge/Check Number | Amount $ | Overpayment $ | Batch Number |

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| Mark J Pellecchia | (970) 372-7339 | Mercer |

| Firm Name (if applicable) | Docket Number (when available) |
|---|---|
| | |

| Office Address - Street | City | State | Zip |
|---|---|---|---|
| 2051 Zlaten Drive F205 | Longmont | CO | 80504 |

| Document Type | Jury Demand |
|---|---|
| Complaint | ■ Yes    ☐ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
|---|---|
| Mark J Pellecchia | Plaintiff |

Case Type Number (See page 3 for listing)  699

| | | |
|---|---|---|
| Are sexual abuse claims alleged? | ☐ Yes | ■ No |
| Does this case involve claims related to COVID-19? | ☐ Yes | ■ No |
| Is this a professional malpractice case? | ☐ Yes | ■ No |

If "Yes," see N.J.S.A. 2A:53A-27 and applicable case law
regarding your obligation to file an affidavit of merit.

| Related Cases Pending? | ■ Yes | ☐ No |
|---|---|---|

If "Yes," list docket numbers

Colorado District 1:23-cv-00635-STV

| Do you anticipate adding any parties (arising out of same transaction or occurrence)? | ■ Yes | ☐ No |
|---|---|---|

| Name of defendant's primary insurance company (if known) | ☐ None | ■ Unknown |
|---|---|---|

| **The Information Provided on This Form Cannot be Introduced into Evidence.** |
|---|

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

Do parties have a current, past or recurrent relationship?     ■ Yes     ☐ No
    If "Yes," is that relationship:
    ■ Employer/Employee     ☐ Friend/Neighbor     ☐ Familial     ☐ Business
    ☐ Other (explain) _____

Does the statute governing this case provide for payment of fees     ■ Yes     ☐ No
by the losing party?

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition.
Plaintiff diagnosed with c-ptsd, is pro-se and due to circumstances is under financial distress. Plaintiff requests proceedings to be held in Colorado where he resides. Defendant has adequate means to travel.

♿ Do you or your client need any disability accommodations?     ☐ Yes     ■ No
    If yes, please identify the requested accommodation:

Will an interpreter be needed?     ☐ Yes     ■ No
    If yes, for what language?

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

Attorney/Self-Represented Litigant Signature: _Mark Pellecchia_____

# Civil Case Information Statement (CIS)

Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES

(Choose one and enter number of case type in appropriate space on page 1.)

## Track I - 150 days discovery

| | |
|---|---|
| 151 | Name Change |
| 175 | Forfeiture |
| 302 | Tenancy |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | Book Account (debt collection matters only) |
| 505 | Other Insurance Claim (including declaratory judgment actions) |
| 506 | PIP Coverage |
| 510 | UM or UIM Claim (coverage issues only) |
| 511 | Action on Negotiable Instrument |
| 512 | Lemon Law |
| 801 | Summary Action |
| 802 | Open Public Records Act (summary action) |
| 999 | Other (briefly describe nature of action) |

## Track II - 300 days discovery

| | |
|---|---|
| 305 | Construction |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) |
| 599 | Contract/Commercial Transaction |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) |
| 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 605 | Personal Injury |
| 610 | Auto Negligence – Property Damage |
| 621 | UM or UIM Claim (includes bodily injury) |
| 699 | Tort – Other |

## Track III - 450 days discovery

| | |
|---|---|
| 005 | Civil Rights |
| 301 | Condemnation |
| 602 | Assault and Battery |
| 604 | Medical Malpractice |
| 606 | Product Liability |
| 607 | Professional Malpractice |
| 608 | Toxic Tort |
| 609 | Defamation |
| 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 617 | Inverse Condemnation |
| 618 | Law Against Discrimination (LAD) Cases |

## Track IV - Active Case Management by Individual Judge / 450 days discovery

| | |
|---|---|
| 156 | Environmental/Environmental Coverage Litigation |
| 303 | Mt. Laurel |
| 508 | Complex Commercial |
| 513 | Complex Construction |
| 514 | Insurance Fraud |
| 620 | False Claims Act |
| 701 | Actions in Lieu of Prerogative Writs |

## Multicounty Litigation (Track IV)

| | |
|---|---|
| 271 | Accutane/Isotretinoin |
| 281 | Bristol-Myers Squibb Environmental |
| 282 | Fosamax |
| 285 | Stryker Trident Hip Implants |
| 291 | Pelvic Mesh/Gynecare |
| 292 | Pelvic Mesh/Bard |
| 293 | DePuy ASR Hip Implant Litigation |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components |
| 299 | Olmesartan Medoxomil Medications/Benicar |
| 300 | Talc-Based Body Powders |
| 601 | Asbestos |
| 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 625 | Firefighter Hearing Loss Litigation |
| 626 | Abilify |
| 627 | Physiomesh Flexible Composite Mesh |
| 628 | Taxotere/Docetaxel |
| 629 | Zostavax |
| 630 | Proceed Mesh/Patch |
| 631 | Proton-Pump Inhibitors |
| 632 | HealthPlus Surgery Center |
| 633 | Prolene Hernia System Mesh |
| 634 | Allergan Biocell Textured Breast Implants |
| 635 | Tasigna |
| 636 | Strattice Hernia Mesh |
| 637 | Singulair |
| 638 | Elmiron |

If you believe this case requires a track other than that provided above, please indicate the reason on page 1, in the space under "Case Characteristics".

**Please check off each applicable category**

☐ **Putative Class Action**        ☐ **Title 59**                ☐ **Consumer Fraud**

# PELLECCHIA v. PRINCETON UNIVERSITY

DESIRED COMPENSATORY AND PUNATIVE PAYMENT:

The plaintiff, Mark J. Pellecchia requests: One half or fifty percent (50%) of the retirement account holdings of all individuals involved that are now or once were paid through the Princeton University payment systems or equivalent lump sum payout.

October 30, 2023

/s/ Mark J. Pellecchia

2051 Zlaten Dr. F205

Longmont, CO 80504