**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK J. PELLECCHIA,<br><br>Plaintiff,<br><br>v.<br><br>PRINCETON UNIVERSITY BOARD OF TRUSTEES,<br><br>Defendant. | Civil Action No. 23-21828 (GC) (JBD)<br><br>**OPINION** |

**CASTNER, U.S.D.J.**

      **THIS MATTER** comes before the Court upon Defendant Princeton University's Motion to Dismiss Plaintiff Mark Pellecchia's complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF No. 5.) Plaintiff opposed. (ECF Nos. 10 & 11.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's motion is **GRANTED**.

**I.     BACKGROUND**

      Plaintiff Mark Pellecchia claims that he suffered physical and emotional harm stemming from incidents that occurred during his almost twenty-year employment with Defendant Princeton University.[1] (ECF No. 1 at 9.)

---

[1] According to Defendant, Plaintiff was employed in Princeton University's Office of Information Technology from July 8, 2002, until April 3, 2020. (ECF No. 5-1 at 6.)

On October 3, 2023, Plaintiff filed a complaint against Princeton University in the Superior Court of New Jersey, Mercer County, asserting claims for "infliction of bodily harm," "intentional infliction of emotional distress," "negligent infliction of emotional distress," and "invasion of privacy." (*Id.* at 10.)  Prior to service of the complaint, Defendant removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (*Id.* at 1-4.)

Plaintiff alleges that a series of "very subtle" incidents took place while he was employed at Princeton University that "created a work environment" that was "intimidating, hostile, or abusive" and that the "abuse ultimately extended out to his private life."[2] (*Id.* at 11.)  He alleges that these incidents demonstrate that "Princeton University employees, affiliates, and townspeople knew intimate details of his web surfing behaviors, spoken comments while in the privacy of his home, and therapy sessions." (*Id.* at 9.)  The alleged incidents are as follows.

- In 2017, Plaintiff was at home, and he "placed a beer bottle under the cold tap and spun it to cool it down."  The next day, while Plaintiff was playing softball, a Princeton University student said to Plaintiff, "did you know that spinning a bottle under water is a way to cool it down faster?" (*Id.* at 13.)

- In 2018:

    o A co-worker told Plaintiff that a photograph of Plaintiff's nephew and niece was "cute."  When Plaintiff said that the children were not his, the co-worker "looked surprised and walked out without allowing him to explain."  After this exchange, "photos of new children showed up in several of his co-workers' offices."  Plaintiff told a co-worker that a girl in a photo on the co-worker's credenza was "hot."  The co-worker informed Plaintiff that the girl was still in high school. (*Id.* at 14.)

    o Plaintiff was at home, and he "jested about having 80% good luck for the following day."  The next day, while Plaintiff was trying to repair a server, Plaintiff spoke to a co-worker who said, "there's your 80% luck." (*Id.* at 13.)

---

[2]  Plaintiff indicates in his complaint that he suffers from complex post-traumatic stress disorder and that he experienced traumatic incidents as a child. (ECF No. 1 at 8, 11.)

- o While walking to lunch, Plaintiff saw people wearing blue shirts, and he commented, "Blue, Blue." The next day, a co-worker said "blue, blue" to Plaintiff with a smirk. (*Id.* at 16.)

- In 2019:

    - o Plaintiff "purchased a bottle of Charlotte's Web CBD oil" and placed the bottle in his office's "overhead cabinet." The next day, a co-worker sarcastically told Plaintiff to "make sure you shake the bottle really good first." (*Id.* at 15.)

    - o Plaintiff "drank a large glass of water from the filtered water dispenser" that allegedly cause Plaintiff to become "high" within "minutes." A co-worker "witnessed the non-characteristic behavioral change." (*Id.* at 17.)

- In October 2020, Plaintiff's "apartment in New Jersey was illegally entered and combustible material was smeared on the gas burners of his stove." (*Id.*)

- In September 2022, Plaintiff's "home in Colorado was illegally entered and the beer that was brewing was contaminated." (*Id.*)

- At unknown points:

    - o Plaintiff was "updating a twitter account page," and Plaintiff's co-workers were "reverting changes he had just made" and "laughing as [Plaintiff] went back to fix the work they had undone." (*Id.* at 14.)

    - o A co-worker "displayed exceptionally aggressive behavior" toward Plaintiff during "a campus intramural softball game." Later, the same co-worker "began to intentionally slow his speech" while on the telephone with Plaintiff in order to "mirror" or "mimic" Plaintiff who was subject to a "nonconsensual drugging."[3] (*Id.* at 15.)

    - o Plaintiff was at home and "passively messaged not to go to a softball game." The cleats Plaintiff brought to the game ended up being "a larger size and not the same cleats" as those he owned. (*Id.*)

    - o While Plaintiff was working on a shared display, Plaintiff's co-worker "typed out the letters 'cry,' as he looked across the table with a smirk." (*Id.* at 16.)

    - o After Plaintiff made a brief reference to an event that occurred in his life, a co-worker told Plaintiff, "I'm sorry that happened to you." (*Id.*)

---

[3] Plaintiff does not allege that the co-worker was responsible for the alleged "drugging."

As a result of these alleged incidents, Plaintiff claims that he was diagnosed with complex post-traumatic stress disorder. (*Id.* at 18.) He alleges that he "felt it necessary to move . . . to another state out of fear for his own safety" and that he is "unable to move forward and live a normal life."[4] (*Id.*)

On December 4, 2023, Defendant moved to dismiss Plaintiff's complaint under Rule 12(b)(6). (ECF No. 5.) On January 8, 2024, the Court issued an Order directing Plaintiff to respond to the motion. (ECF No. 8.) On January 19, 2024, Plaintiff filed an opposition that simply states, "[t]here does not appear to be any basis for dismissal." (ECF No. 10.) On January 22, 2024, Defendant wrote that it saw "no reason to file a reply." (ECF No. 11.)

## II.  **LEGAL STANDARD**

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that

---

[4] Plaintiff also says that he "has been under financial attack since he received his retirement 401k portfolio in 2020," and he cites a suit he filed in the United States District Court for the District of Colorado against Fidelity Brokerage Services LLC. (ECF No. 1 at 12.) In addition, he claims that there were "salary discrepancies" when he worked at Princeton, but Plaintiff provides no factual detail about any such discrepancies. (*Id.*)

are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

### III. DISCUSSION

The Court will dismiss Plaintiff's tort-based claims without prejudice because he does not allege facts to substantiate a plausible claim against Defendant.[5] Considering Plaintiff's *pro se* status, the Court will give Plaintiff thirty days to move for leave to file an amended complaint to try to remedy the defects identified herein.

Under New Jersey law,[6] "common-law assault requires: (1) an action intending to cause a harmful or offensive contact or place a person in imminent apprehension of such contact; and (2) the person is placed in imminent apprehension, while battery is premised 'upon a nonconsensual touching.'"[7] *Bernard v. Cosby*, 648 F. Supp. 3d 558, 574-75 (D.N.J. 2023) (quoting *Leang v.*

---

[5] Plaintiff at times cites various statutes and regulations, but unlike his expressly stated common-law claims, there is no indication that Plaintiff intended to assert a claim under these statutes and regulations. While the Court is committed to its duty to construe *pro se* pleadings liberally, the Court will refrain from rewriting the pleading to assert claims that Plaintiff did not set forth. *See United States v. Peppers*, 482 F. App'x 702, 704 (3d Cir. 2012) ("While a court must construe a *pro se* litigant's pleadings liberally, it need not act as [his] advocate." (citations omitted)).

[6] Because Plaintiff's tort claims arise from his employment in New Jersey for a New Jersey-based employer, this Court sitting in diversity in New Jersey will apply New Jersey law. *See Shelley v. Linden High Sch.*, Civ. No. 19-20907, 2021 WL 2850452, at *3 (D.N.J. July 7, 2021).

[7] Although Plaintiff asserts a claim for "infliction of bodily harm," assault and battery are the common-law claims ordinarily asserted for such harm. *See, e.g., Gibson v. United States*, 457 F.2d 1391, 1396 n.7 (3d Cir. 1972) ("At common law, the remedy for the *intentional* infliction of bodily harm resulting directly from the actor's conduct was redressed by an action of trespass for

*Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009)). Here, Plaintiff does not plausibly allege that that he was subject to "nonconsensual touching" by Defendant or its employees or that he was in "imminent apprehension" of "a harmful or offensive contact." *See Shelley v. Linden High Sch.*, Civ. No. 19-20907, 2020 WL 6391191, at *3 (D.N.J. Nov. 2, 2020) ("The Complaint does not allege that the Schools touched or contacted Plaintiff, nor does it allege that the Schools attempted to touch Plaintiff or that Plaintiff feared an imminent harmful or offensive touch. . . . Plaintiff has failed to plausibly allege assault and battery. These claims are dismissed."). The claim is therefore dismissed without prejudice.

For intentional infliction of emotional distress, a plaintiff must plead, among other things, that the "defendant's conduct was 'extreme and outrageous.' The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Moretz v. Trustees of Princeton*, Civ. No. 21-19822, 2023 WL 9017155, at *6 (D.N.J. Dec. 29, 2023) (quoting *Ingraham v. Ortho-McNeil Pharm.*, 25 A.3d 1191, 1195 (N.J. Super. Ct. App. Div. 2011)).

Here, the conduct that Plaintiff complains of does not plausibly rise to the level of "extreme or outrageous." Plaintiff alleges that his co-workers, students, and others made certain comments (*e.g.*, "blue, blue"; "there's your 80% luck"; "make sure you shake the bottle really good first"; "cry") over several years that Plaintiff alleges shows that Defendant knew what Plaintiff was saying or doing in private. Plaintiff does not allege plausible facts from which this Court could infer a claim for intentional infliction of emotional distress. *See, e.g., Shui v. Wang*, Civ. No. 23-2620, 2023 WL 8520778, at *6 (D.N.J. Dec. 8, 2023) (dismissing intentional infliction of

---

battery. Therefore, bodily harm so caused and, indeed, the act which caused it were both customarily called a battery." (citation omitted)).

emotional distress claim for lack of "extreme and outrageous conduct" where the defendants were alleged to have "made working conditions . . . difficult and stressful and were 'insulting, condescending, and rude throughout the parties' dealings'"); *Jayme v. MCI Corp.*, Civ. No. 07-55, 2008 WL 508601, at *5 (D.N.J. Feb. 21, 2008) (dismissing intentional infliction of emotional distress claim where the defendant "used an irritating tense voice" on the phone with the plaintiff, "banged the phone while [the plaintiff] was still talking," and the plaintiff alleged that he "was 'emotionally jarred,' and that he 'was humiliated like a slap on the face'"); *Bishop v. Inacom, Inc.*, Civ. No. 99-664, 1999 WL 1416919, at *9 (D.N.J. Dec. 1, 1999) (finding insufficient that a supervisor made "rude" and "degrading comments" about the plaintiff). Moreover, Plaintiff does not allege that anyone at Princeton is connected in any way to the alleged break-ins to his homes in New Jersey or Colorado. Plaintiff's allegations are therefore insufficient for an intentional infliction of emotional distress claim.

For negligent infliction of emotional distress, a "plaintiff must show that: (1) defendant owed a duty to plaintiff; (2) defendant breached that duty; (3) plaintiff suffered severe emotional distress; and (4) defendant's breach proximately caused plaintiff's emotional distress." *Johnson v. City of Hoboken*, 299 A.3d 856, 864 (N.J. Super. Ct. App. Div. 2023) (quoting *Dello Russo v. Nagel*, 817 A.2d 426, 435 (N.J. Super. Ct. App. Div. 2003)). Here, Plaintiff does not plead any facts supporting a finding that Defendant breached a duty proximately causing Plaintiff severe emotional distress. *See, e.g.*, *Larry v. State*, No. A-1286-10T2, 2011 WL 6782438, at *2 (N.J. Super. Ct. App. Div. Dec. 28, 2011) ("[T]he employer had no reason to foresee that its actions would lead an employee in plaintiff's position to experience fright or shock sufficient to cause substantial injury."). The claim is therefore dismissed without prejudice.

Finally, for invasion of privacy via an "intentional intrusion" claim,[8] it consists of an "intentional intrusion, 'physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns' that 'would be highly offensive to a reasonable person.'" *Barker v. United Airlines, Inc.*, Civ. No. 23-3065, 2024 WL 378633, at *6 (D.N.J. Feb. 1, 2024) (quoting *G.D. v. Kenny*, 15 A.3d 300, 319-20 (N.J. 2011)). Here, there are no non-conclusory factual allegations that plausibly suggest that Defendant or one of Defendant's employees or agents invaded Plaintiff's private affairs. The claim is therefore dismissed without prejudice.

Even if Plaintiff plausibly stated the tort claims, Defendant argues that Plaintiff does not identify tortious conduct by Princeton University as an institution nor does he allege plausible facts to hold the University vicariously liable for the alleged intentional acts of those involved. (ECF No. 5-1 at 16-17.)

Although employers may be liable for torts committed by their employees within the scope of their employment, courts in New Jersey have long recognized that "[o]nly rarely will intentional torts fall within the scope of employment." *Davis v. Devereux Found.*, 37 A.3d 469, 490 (N.J. 2012); *see also Wells Fargo Bank, N.A. v. Friedman*, No. A-1420-22, 2024 WL 3319829, at *5 (N.J. Super. Ct. App. Div. July 8, 2024) ("Importantly, our Supreme Court has noted that '[o]nly rarely will intentional torts fall within the scope of employment.'" (citation omitted)). The factors used to determine if an employee's tortious act is in the scope of his or her employment are: "(a) it is of the kind he [or she] is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master;

---

[8] The Court focuses on the claim of intentional intrusion on seclusion because there is no suggestion that Plaintiff has been defamed, placed in a false light, or had his likeness appropriated. *See Rumbauskas v. Cantor*, 649 A.2d 853, 856 (N.J. 1994) (listing the "four types of invasions of privacy").

8

and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." *Davis*, 37 A.3d at 490 (quoting *Restatement (Second) of Agency* § 228(1) (1958)).

Here, it is not clear to the Court if any of the acts complained of could plausibly give rise to vicarious liability against Princeton University. The primary issue is that Plaintiff does not allege that the comments and other actions were of the kind that Defendant's employees were employed to make; that the employees were motivated by a desire to serve the University; or that any intentional force, if any, was expected by the University. *See id.* at 492 ("McClain's conduct is clearly outside of the scope of her employment. . . . While McClain's act was 'substantially within the authorized time and place limits' of her job, it was not by any measure 'actuated' by a purpose to serve Devereux."); *see also Roe ex rel. Roe v. Rutgers, State Univ. of New Jersey*, Civ. No. 13-1762, 2013 WL 3446456, at *5 (D.N.J. July 9, 2013) ("Plaintiffs fail to establish a viable claim against Rutgers for the intentional torts of sexual assault, assault, and invasion of privacy. Although Stubblefield was a Rutgers employee, her actions were allegedly intentional and not within the scope of her employment. . . . Furthermore, Stubblefield's alleged actions were not foreseeable and could not reasonably be actuated by a purpose of serving Rutgers.").

Finally, Defendant argues that Plaintiff's tort claims are time-barred. (ECF No. 5-1 at 11-13.) Defendant argues that Plaintiff's claims are subject to a two-year statute of limitations in New Jersey, and because Plaintiff's active employment with the University ended in April 2020,[9] more

---

[9] Defendant writes that "Plaintiff continued to be an employee of the University in an inactive status (*i.e.*, not performing any work) for purposes of receiving disability and medical benefits only, . . . until May 6, 2022." (ECF No. 5-1 at 6 n.1.)

9

than three years before he sued, the claims are out of time.[10] (*Id.* at 6, 11-13.) Because the Court dismisses the complaint for the reasons already given, it does not reach the limitations argument at this time. Several of the alleged incidents are undated, and Plaintiff should be given an opportunity in an amended pleading to specify the alleged dates of his employment with Defendant and when each incident occurred. The Court notes that the Third Circuit Court of Appeals has instructed that a claim should be dismissed on limitations grounds "only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations," and "if the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017) (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).

### IV.   CONCLUSION

For the reasons set forth above, and other good cause shown, Defendant's Motion to Dismiss (ECF No. 5) is **GRANTED**. An appropriate Order follows.

Dated: July 30, 2024

*[signature]*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

[10] Defendant includes a certification from counsel and several exhibits intended to confirm when Plaintiff's employment with the University concluded. (*See* ECF Nos. 5-2 & 5-3.)